Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Jesse C. Ferrantella CA Bar No. 279131
jesse.ferrantella@ogletree.com
Thomas R. Boswell CA Bar No. 325656
thomas.boswell@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA 92122
Telephone: 858-652-3100
Facsimile: 858-652-3101

Attorneys for Defendant CAREFUSION RESOURCES, LLC; AUGUSTA LIFE SCIENCES US SPINCO, LLC; and BECTON, DICKINSON AND COMPANY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL TEDDY, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAREFUSION RESOURCES, LLC, a Delaware limited liability company; AUGUSTA LIFE SCIENCES US SPINCO, LLC, a Delaware limited liability company; BECTON DICKINSON AND COMPANY, a New Jersey corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. '26CV4697 AJB VET<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[*Civil Cover Sheet, Declaration of Jesse Ferrantella, Declaration of Jennifer Marasco, Notice of Interested Parties, and Corporate Disclosure Statements filed concurrently herewith*]<br><br>Complaint Filed: July 7, 2026<br>Trial Date: Not Set |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendants CAREFUSION RESOURCES, LLC (“CareFusion”), AUGUSTA LIFE SCIENCES US SPINCO, LLC (“Augusta”), and BECTON, DICKINSON AND COMPANY (“BD”) (collectively “Defendants”), hereby remove this action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California under 28 U.S.C. § 1332(d) (Class Action Fairness Act [“CAFA”]).

As set forth herein, removal is proper because: (1) Plaintiff and other members of the putative class are citizens of a state different from any defendant; (2) the number of members of the putative class is over 100; and (3) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. All CAFA requirements are satisfied.

## I. <u>THE STATE COURT ACTION</u>

1. On July 7, 2026, Plaintiff filed a Complaint in the Superior Court of California, County of San Diego, captioned *Michael Teddy v. CareFusion Resources, LLC, et al.*, Case No. 26CU036527C (“Action”). The Complaint purports to assert claims against Defendants for: (1) Unpaid Overtime; (2) Unpaid Meal Period Premiums; (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Untimely Final Wages; (6) Failure to Provide Accurate Wage Statements; (7) Failure to Reimburse Work Expenses; and (8) Unfair Business Practices. A true and correct copy of the Complaint is attached as **Exhibit 1**. Declaration of Jesse C. Ferrantella (“Ferrantella Decl.”), ¶ 2.

2. On July 16, 2026, and August 7, 2026, respectively, Defendants were served with the Complaint. A true and correct copy of the Proofs of Service are attached as **Exhibit 2**. Ferrantella Decl., ¶ 3.

/ / /

3. On August 14, 2026, Defendants filed an Answer to Plaintiff's Complaint. A true and correct copy of Defendants' Answer is attached as **Exhibit 3**. Ferrantella Decl., ¶ 4.

## II. THE REMOVAL IS TIMELY

4. The time to remove under 28 U.S.C. Section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005). Here, the Complaint does not contain all facts and data to calculate the amount in controversy with reasonable certainty as to the individually named Plaintiff or as to the putative class. Accordingly, it is not possible to ascertain solely from the Complaint all facts and data that this case is removable, and, to date, Defendants have not received any other document which would constitute an "other pleading, motion, order or other paper" providing this information. Ferrantella Decl. ¶ 6. Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.,* 720 F.3d 1121, 1125 (9th Cir. 2013); *see also Kohrs v. Swift Trans. Co. of AZ, LLC,* No. 24-4483, 2025 WL 3066302, at *2 (9th Cir. Nov. 3, 2025) (finding removal timely where defendant was not placed on notice of removability from the face of the complaint or by service of any other document). As set forth below, Defendants have only recently discovered such evidence after collection and review of relevant records of the implicated employees and an analysis of the estimated damages based on reasonable assumptions drawn from the Complaint. Therefore, Defendants are timely removing this case based on that information, as well as the allegations in the Complaint.

5. Even if it could be determined from the face of the Complaint that this action is removable, this Notice of Removal would still be timely. Service of the Complaint and Summons occurred on July 16, 2026, and August 7, 2026, respectively.

Ferrantella Decl. ¶ 3, Ex. 2. As such, the time to remove could not expire, at the earliest, until August 17, 2026, the first court day 30 days after service of the Complaint. 28 U.S.C. § 1446(b). This Notice is therefore timely, as it was filed by that date.

## IV. REMOVAL IS PROPER UNDER CAFA

6. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

7. Removal is proper given Plaintiff's allegations and claims. The Complaint asserts these claims on a class basis: (1) Unpaid Overtime; (2) Unpaid Meal Period Premiums; (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Untimely Final Wages; (6) Failure to Provide Accurate Wage Statements; (7) Failure to Reimburse Work Expenses; and (8) Unfair Business Practices. *See* Ex. 1, Complaint.

8. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from Defendants; the number of potential class members is over 100; and the matter in controversy exceeds $5 million, exclusive of interest and costs.

### A. CAFA's Diversity of Citizenship Requirement Is Satisfied

9. CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a state different from any defendant.'" *Bradford v. Bank of Am. Corp.*, 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015); citing, *California v. InelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014); 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b).

10. Citizenship of Plaintiff and putative class members. At all relevant times, Plaintiff was a citizen of California. *See* Ex. 1, Complaint, ¶ 6; Declaration of Jennifer Marasco ("Marasco Decl."), ¶ 2. Members of the proposed class are, by definition, "California citizens." *See* Ex. 1, Complaint, ¶¶ 19. Plaintiff was a former employee of BD. Marasco Decl., ¶ 2.

11. Citizenship of Defendant. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court established the proper test for determining a corporation's principal place of business for diversity jurisdiction. *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at p. 1184. It is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.*

12. At all relevant times, BD has been a citizen of New Jersey. *See* Marasco Decl., ¶ 3. BD was organized under the laws of the State of New Jersey and its principal place of business is in New Jersey. *Id.* BD's principal address, along with its corporate executives, are in New Jersey. *Id.*

13. The CAFA diversity requirement has been met because Plaintiff (or any one of the numerous putative class) is a citizen of California and BD is not; it is a citizen of Delaware and New Jersey. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

**B. CAFA's Class Size Requirement Is Satisfied**

14. Plaintiff brings this Action under California Code of Civil Procedure § 382 on behalf of numerous subclasses (collectively defined as the "Class"), including people that fall within this category:

/ / /

> All current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint…

Ex. 1, Complaint, ¶ 19. Plaintiff seeks to certify a class going back four years. *See id.,* ¶ 3; *see also* Cal. Bus. & Prof. Code § 17208 (statute of limitations under the unfair competition law is four years); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000) (Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution).

15. From July 7, 2022, through the date of this Notice of Removal, BD has directly employed approximately 803 putative class members in the aggregate. Marasco Decl., ¶ 4. This four-year lookback period corresponds within the statutory limitations period of the Unfair Competition claim alleged by Plaintiff. Bus & Prof. Code § 17208; Ex. 1, Complaint, ¶¶ 98-105, Prayer. Thus, CAFA's size requirement of at least 100 members is satisfied.

### C. **CAFA's $5 Million Amount In Controversy Requirement Is Satisfied**

16. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

17. Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5 million]." *Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). Courts look to the allegations in the complaint in determining the amount in controversy. *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint"). "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a

verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806 (9th Cir. 2017).

18. Plaintiff seeks the recovery of meal and rest period premium pay, unpaid wages (including minimum wages and overtime wages), itemized wage statement penalties, and waiting time penalties on behalf of himself and the putative class. *See* Ex. 1, Complaint. The Complaint satisfies the $5 million threshold for CAFA Removal.[1] *See* 28 U.S.C. § 1332(d).

**1. Relevant Data**

19. From July 7, 2022 to the present, BD employed, in the aggregate, at least 803 non-exempt employees in California. Marasco Decl., ¶ 4. Those employees worked approximately 89,506 workweeks. *Id.* The average rate of pay during this period was $33.07 per hour. *Id.*

20. From July 7, 2023 to the present, BD separated with at least 236 non-exempt employees in California. Marasco Decl., ¶ 5. The average rate of pay for these persons is approximately $31.57 per hour. (*Id.*)

21. From July 7, 2025, to the present, BD employed at least 432 non-exempt employees in California for whom there are approximately 8,277 bi-weekly pay periods for which wage statements would be issued. Marasco Decl., ¶ 6.

**2. Unpaid Time from Off-The-Clock Work**

22. Plaintiff alleges that Defendants did not pay employees for all hours worked and required Plaintiff and members of the putative class to work off-the-clock including, *inter-alia*, by prohibiting overtime but assigning duties that required employees to work overtime off-the-clock. Ex. 1, Complaint, ¶ 33. Plaintiff further alleges that Defendants "implemented policies that prohibited Plaintiff and the Class

[1] In alleging the amount in controversy for purposes of CAFA, Defendants do not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor do Defendants concede that any or all putative class members are entitled to any recovery in this case or are appropriately included in the action. Defendants also do not concede Plaintiff can bring claims on class or representative basis. Indeed, Defendants asserted various defenses to the claims in its Answer.

from accurately recording the actual time worked, resulting in a failure to pay Plaintiff and the Class all wages owed." *Id.*, ¶¶ 34. Plaintiff contends this resulted in potential class members earning less than the minimum wage rate. Ex. 1, Complaint, ¶¶ 38.

23. Plaintiff's First Cause of Action incorporates these allegations, and alleges "Plaintiff and the other Class Members regularly worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." Ex. 1, Complaint, ¶ 52. Further, "Defendants often intentionally and willfully failed to pay all overtime wages owed to Plaintiff and the other Class Members." Ex. 1, Complaint, ¶ 53.

24. Labor Code Section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." California Labor Code § 510 states that any work over 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay. Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

25. Plaintiff's Unfair Competition Law ("UCL") is premised on the conduct in the Complaint including the above alleged off-the-clock work. Ex. 1., Complaint, ¶¶ 98-105. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000).

26. Defendants may employ reasonable assumptions based on the Complaint to determine the amount in controversy. *Arias v. Residence Inn By Marriott, Ltd.*, 936 F.3d 920, 927 (9th Cir. 2019) ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground

underlying them.'"). An estimate of one hour of unpaid wages and one hour of overtime for every workweek has been accepted by the federal courts as a reasonable and conservative figure. *Perez v. Rose Hills Company*, 131 F.4th 804, 809 (9th Cir. 2025) (finding an assumption reasonable of one hour of unpaid regular time and one hour of unpaid overtime appropriate based on allegations in the complaint that such violations occurred "at times" and "throughout the statutory period"); *see also, Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable based on allegations that the violations occurred "as matters of policy and/or practice"); *Cavada v. Inter-Continental Hotels Group, Inc.*, 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable complaint alleged "systematic scheme" to refuse to pay overtime and uniform policy and practice that did not accurately record overtime worked); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours of unpaid overtime per week was reasonable where complaint had generic allegations of a failure to pay for all regular and/or overtime wages); *Rivera v. Agreserves, Inc.*, 2023 WL 5202575 (Aug. 14, 2023); *Stanley v. Distrib. Alts., Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"). Accordingly, based on this authority, Defendants conservatively estimate one hour per week of unpaid regular time and one unpaid hour per week of unpaid overtime.

27. From July 7, 2022 to the Notice of Removal, BD employed, in the aggregate, at least 803 non-exempt employees in California. Marasco Decl., ¶ 4. Those employees worked approximately 89,506 workweeks. *Id.* The average rate of pay during this period was $33.07. *Id.*

28. Based on the above facts and allegations in Plaintiff's Complaint, and using the average wage rate for all employees of $33.07, and the average overtime rate of $49.61 ($33.07 x 1.5 = $49.61), Defendants calculate that Plaintiff's claims for unpaid wages are **$7,400,355** (minimum wage: $33.07 an hour x 1 hour x 89,506 workweeks = $2,959,963; overtime: $49.61 per hour x 1 hour x 89,506 workweeks = $4,440,392). The computation of the amount in controversy is based on a conservative calculation that the minimum 803 putative class members worked at least 89,506 weeks, that each putative class member had one hour per week of unpaid regular time and one unpaid hour per week of overtime.

**3. <u>Alleged Meal and Rest Period Violations</u>**

29. Plaintiff's Second Cause of Action alleges that employees were denied the opportunity to take timely meal breaks and that they were not paid the meal penalty premium as required by law. Ex. 1, Complaint, ¶¶ 61-64. Specifically, Plaintiff alleges that "Defendants often intentionally and willfully required Plaintiff and the other Class Members to miss their meal periods and to take meal periods that were late, shortened, or interrupted, and failed to compensate Plaintiff and the other Class Members the full meal period premium for missed, shortened, late, or interrupted meal periods." *Id.*, ¶ 63. Plaintiff further alleges that Defendants would "often schedule Plaintiff and the Class in a way that often prohibited them from taking timely and duty-free meal periods, and to frequently require Plaintiff and the Class to work through their meal periods, for which they were not compensated." *Id.*, ¶ 28, *see also* ¶ 29 ("Defendants often failed to provide legally compliant meal periods to Plaintiff and the Class.")

30. In Plaintiff's Third Cause of Action, Plaintiff alleges that the Defendants did not provide rest periods to Plaintiff and the putative class members within the required time and did not pay putative class members a rest period premium for rest breaks they could not take. Ex. 1, Complaint, ¶¶ 71-73. Plaintiff alleges that "Defendants at times willfully required Plaintiff and the other Class Members to work during rest periods, failed to allow Plaintiff and the other Class Member to take any

rest period and/or failed to authorize and permit Plaintiff and the other Class Members to take uninterrupted, duty-free rest breaks." *Id.*, ¶ 72. Plaintiff further alleges that "Defendants often failed to authorize and permit Plaintiff and the Class to take duty-free rest periods." *Id.*, ¶ 32.

31. Plaintiff further alleges that Defendants employed "policies and practices" that prevented Plaintiff and the putative class from taking meal and rest periods. Ex. 1, Complaint ¶¶ 27, 30, 31, 101. As Plaintiff bases his claims of missed meal and rest periods on Defendants' "policies and practices," and alleges such conduct occurred "often" or "frequently," Defendants "may employ reasonable assumptions based on the Complaint to determine the amount in controversy. *Arias*, 936 F.3d at 927; *see also Perez*, 131 F.4th at 809. The language in Plaintiff's Complaint indicates that a meal and rest period violation rate of at least 50% would be appropriate, given similar allegations of a common pattern or practice of violations. *See, e.g., Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) ("courts have found violations rates of 50% proper with language such as 'policy and practice;'"); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate [or 2.5 violations per week per claim; or 5 total] on both meal *and* rest period claims where plaintiffs alleged that "Plaintiffs and the class members *sometimes* did not receive all of their meal periods in a lawful fashion" and Defendant "maintained a policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods"); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate for the meal period claim proper where the complaint

alleged only that Defendant had a "policy and practice" of meal violations). An estimate of one meal period and one rest period violation for every week of work would be an extremely conservative estimate. *See, e.g., Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from the Northern District of California have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations"); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving of defendant's assumption that class members missed one required meal period per week).

32. Plaintiff's Unfair Competition Law ("UCL") is premised on the conduct in the Complaint including the above alleged meal and rest period practices. Ex. 1, Complaint, ¶¶ 98-105. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. A plaintiff may seek to recover meal and rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages. *See Naranjo v. Spectrum Sec. Servs.*, 13 Cal.5th 93, 117 (2022) ("missed-break premium pay constitutes wages").

33. From July 7, 2022 to the Notice of Removal, BD employed, in the aggregate, at least 803 non-exempt employees in California. Marasco Decl., ¶ 4. Those employees worked approximately 89,506 workweeks. *Id.* The average rate of pay during this period was $33.07. *Id.*

34. Even using an extremely conservative rate of 1 violation per 5-day workweek (i.e., 20%) for meal periods and 1 violation per 5-day workweek (i.e., 20%) for rest periods, the meal and rest period premium pay in controversy is at least **$5,919,926** ($33.07 per hour x 1 meal premium per week x 89,506 workweeks = $2,959,963; $33.07 per hour x 1 rest premium per week x 89,506 workweeks = $2,959,963).

/ / /

/ / /

**4. <u>Alleged Wage Statement Penalties</u>**

35. Plaintiff's Sixth Cause of Action seeks penalties for alleged inaccurate wages statements under California Labor Code § 226. Ex. 1, Complaint, ¶ 87-93. Plaintiff alleges Defendants "intentionally and willfully failed to provide Plaintiff and the Class with completed and accurate wage statements." *Id.*; *see also id.*, ¶ 89. Plaintiff seeks statutory penalties for these alleged violations. *Id.*, ¶ 92. Plaintiff's wage statement claim is derivative of their other allegations that, *inter alia,* Defendants had a policy and practice to deny putative class members the opportunity to take meal and rest periods, a policy and practice not to pay for all hours worked, and not to properly compensate for overtime. The Complaint alleges that wage statements were inaccurate for each pay period based on these violations. *Id.*, ¶ 89.

36. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015). Labor Code § 226(e) provides for the greater of all actual damages or $50 for the initial pay period in which a violation occurred and $100 for each subsequent pay period in which a violation occurred, up to $4,000.00 per putative class member. Lab. Code § 226(e).

37. From July 7, 2025 to present, BD employed at least 432 putative class members who received approximately 8,277 bi-weekly wage statements. Marasco Decl., ¶ 6.

38. An estimated 100% wage statement violation rate for purposes of removal is reasonable given the allegations in Plaintiff's Complaint. *See, e.g., Baker v. Propak Logistics, Inc.*, 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *Mendoza v. Nat'l Vision, Inc.* (2019) WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving of 100% wage statement violation rate); *Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable).

/ / /

39. Based on the above, the total amount of potential wage statement penalties to putative class members in controversy is at least **$806,100** (432 initial wage statements x $50 = $21,600; 7,845 [8,277 – 432] subsequent wage statements x $100 = $784,500 [$21,600 + $784,500 = $806,100]).

**5. <u>Alleged Waiting Time Penalties</u>**

40. Plaintiff's Fifth Cause of Action seeks penalties under California Labor Code §§ 201-203 for failure to pay wages timely upon termination. Ex. 1, Complaint, ¶¶ 81-86. Specifically, Plaintiff contends "Defendants often intentionally and willfully failed to pay Plaintiff and other Class Members who are no longer employed by Defendants all of their wages…" *Id.*, ¶ 83. Thus, Plaintiff seeks the statutory waiting time penalty for Plaintiff and all other putative class members who are no longer employed by Defendants. *Id.*, ¶ 86.

41. California Labor Code § 203 states that "[i]f an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010).

42. From July 7, 2023 to the Notice of Removal, BD separated employment with approximately 236 non-exempt employees in California. Marasco Decl., ¶ 5. Their average hourly rate for this population was approximately $31.57. *Id.* This equals an average daily rate of approximately $252.56.

43. Therefore, based on Plaintiff's claim of entitlement to statutory penalties premised on violation of Labor Code § 201 and 202, the amount in controversy for waiting time penalties is at least **$1,788,124** ($31.57 per hour x 8 hours x 30 days x 236 putative class members = $1,788,124). *Jauregui v. Roadrunner Trans. Servs. Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *see also Bernardo v. Carl's Jr. Restaurants LLC*,

No. 2:25-CV-00826-CAS-PVCX, 2025 WL 1561705, at *8 (C.D. Cal. June 2, 2025) ("In *Jauregui*, the Ninth Circuit specifically deemed reasonable the assumption that all class members suffered the maximum 30-day waiting time penalty."); *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, 2023 WL 524626 (C.D. Cal. Aug. 14, 2023) (holding that when a waiting time claim is derivative of other labor code violations on behalf of a class, a 100% violation rate is appropriate for former employees).

### 6. **Summary and Further Data**

44. Based on the above claims, Defendants have shown at least **$15,914,505** is in controversy based on Plaintiff's allegations ($2,959,963 Minimum Wages + $4,440,392 OT Wages + $2,959,963 Meal Premiums + $2,959,963 Rest Premiums + $806,100 Wage Statement Penalties + $1,788,124 Waiting Time Penalties).

45. For purposes of this removal, the claims above alone are sufficient to support the required $5 million threshold amount in controversy. However, Defendants have provided data sufficient to calculate and support, based on Plaintiff's allegations, an even greater amount in controversy. Marasco Decl., ¶¶ 4-6. There is no doubt that, as alleged, the amount in controversy exceeds the requisite threshold.

### 7. **Attorney Fees**

46. Plaintiff also seeks attorney fees. Ex. 1, Complaint, Prayer for Relief. In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Altamirano v. Shadow Indus., Inc.*, No. C-13-0939 EMC, 2013 WL

2950600, at *13 (N.D. Cal. Jan. 14, 2013) (including 25% attorney's fees to increase the amount-in-controversy to above $5 million CAFA threshold); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same).

47. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees would be **$3,978,626** ($15,914,505 x 0.25).

**8. <u>Total Amount in Controversy</u>**

48. Based on Plaintiff's allegations, the total amount in controversy is at least **$19,893,131** ($15,914,505 + $3,978,626). Plaintiff's allegations easily satisfy the $5 million threshold for removal under CAFA. Even the most conservative of estimated recoveries for Plaintiff's additional claims pushes the amount in controversy well beyond the $5 million threshold.

## III. VENUE IS PROPER IN THIS COURT

49. Under 28 U.S.C. § 1441(a), this Notice of Removal is filed in the district court of the United States in which the Action is pending. The Superior Court of California, County of San Diego, is within the territory of the Southern District of California. Therefore, venue for removal is proper under 28 U.S.C. §84(c)(2) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## IV. DEFENDANTS HAVE SATISFIED THE REMAINING REMOVAL REQUIREMENTS

50. The undersigned is counsel of record for all Defendants. Defendants all consent to and join this removal.

51. Under 28 U.S.C. §1446(a), this Notice of Removal is accompanied by the Declarations of Penny Marasco and Jesse C. Ferrantella, and Exhibits 1-3, which are a copy of all processes, pleadings, and orders provided to Defendants. Ferrantella Decl. ¶ 5.

52. As required by 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was timely filed as detailed above.

53. As required by 28 U.S.C. §1446(d), Defendants provided Notice of Removal to Plaintiff through his attorneys of record. *Id.*

54. As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for San Diego County.

55. If this Court has a question regarding the propriety of this Notice of Removal, Defendants request it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

## VI. CONCLUSION

56. For these reasons, Defendants remove the above-entitled action to the United States District Court for the Southern District of California.

DATED: August 17, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Spencer C. Skeen

Spencer C. Skeen
Jesse C. Ferrantella
Thomas R. Boswell
Attorneys for Defendant CAREFUSION RESOURCES, LLC; AUGUSTA LIFE SCIENCES US SPINCO, LLC; and BECTON, DICKINSON AND COMPANY